UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Grand Jury N-15-1-115

FILED
2016 APR 6 AM 11 15

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:16CR66 MPS |
| | : | |
| | : | VIOLATIONS: |
| v. | : | 18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud) |
| | : | 18 U.S.C. § 1347 (Health Care Fraud) |
| RONNETTE BROWN | : | 18 U.S.C. § 2 (Aiding and Abetting) |

INDICTMENT

The Grand Jury charges:

Introduction

At all times relevant to this Indictment:

1.  Defendant RONNETTE BROWN ("BROWN") resided in Bristol, Connecticut. BROWN was not licensed as a health care provider in any capacity in the State of Connecticut.

2.  The Medicaid program in Connecticut ("Medicaid") was a joint federal-state program which provided health insurance coverage for health care benefits, items, and services provided to Medicaid clients. Medicaid was administered by the federal Centers for Medicare and Medicaid Services, a component of the United States Department of Health and Human Services. It was administered in the State of Connecticut by the Department of Social Services.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

3.  The allegations contained in paragraphs 1 and 2 are hereby realleged and incorporated by reference as though fully stated herein.

1

### The Defendant's Co-Conspirators

4.  Beverly Coker ("Coker"), who is charged separately, resided in Connecticut. Coker was a licensed clinical social worker licensed to practice in the State of Connecticut.

5.  "Individual B," whose identity is known to the Grand Jury, resided in Connecticut. Individual B was not licensed as a health care provider in any capacity by the State of Connecticut.

### The Conspiracy

6.  Beginning in or about May 2010, and continuing to on or about November 11, 2011, in the District of Connecticut and elsewhere, BROWN, Coker, and Individual B knowingly and willfully conspired and agreed together and with each other to commit health care fraud as described in this Indictment, in violation of Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicaid, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, through materially false and fraudulent pretenses and representations.

### The Purpose of the Conspiracy

7.  The purpose of the conspiracy was for BROWN, Coker, and Individual B to enrich themselves and their affiliated companies by executing a scheme to defraud Medicaid of money and property by means of materially false and fraudulent pretenses, representations, and promises, including submitting claims to the Medicaid program for psychotherapy services that purportedly were personally rendered by Coker, a licensed clinical social worker, when in fact, as BROWN and her co-conspirators well and truly knew, the psychotherapy services were either

rendered by individuals who were not licensed to provide psychotherapy, or were not rendered at all.

## The Manner and Means of the Conspiracy

8. It was part of the conspiracy that in or about May 2010, BROWN and Individual B approached Coker, and told Coker that they owned and operated We-MPACT, LLC, a social services business with office locations in Bristol, Connecticut, and Torrington, Connecticut.

9. It was further part of the conspiracy that BROWN and Individual B proposed the following scheme to Coker: BROWN and Individual B would provide social services to We-MPACT's clients or cause social services to be provided to We-MPACT's clients, and these services would be billed to the Medicaid program using Coker's Medicaid provider number, as if Coker was the provider who personally rendered the service. The services would be billed as psychotherapy, which under Connecticut state law and the Medicaid program can only be provided by a licensed provider. BROWN and Individual B were not licensed in Connecticut, and therefore could not perform psychotherapy as defined under Connecticut law and Medicaid. Under the scheme, Coker would retain 30% of the payments from Medicaid for services billed under Coker's provider number, and Coker would pay the remaining 70% to BROWN, Individual B, and, occasionally, other individuals working under the direction and control of BROWN and Individual B.

10. It was further part of the conspiracy that in or about October 2010, Coker began submitting and causing to be submitted claims to Medicaid under the conspiracy.

11. It was part of the conspiracy that BROWN, Coker, and Individual B would submit and cause to be submitted to Medicaid claims for payment for psychotherapy using Coker's Medicaid provider number, falsely representing that Coker had personally rendered the

psychotherapy services to Medicaid clients. In fact, the services were not provided by Coker, but instead were rendered by individuals who were not licensed to provide psychotherapy, or were not rendered at all.

12. It was further part of the conspiracy that by submitting claims to Medicaid that falsely represented that Coker had personally provided the psychotherapy services, BROWN, Coker, and Individual B obtained and attempted to obtain money to which BROWN, Coker, and Individual B were not entitled.

13. Most of the claims submitted to Medicaid under the scheme were submitted using Current Procedural Terminology ("CPT") Code 90808, which represented that Coker had personally provided a 75-80 minute individual psychotherapy session face-to-face with the patient in an office or outpatient facility.

14. It was further part of the conspiracy that in or about January 2011, the volume of claims under the scheme was increasing, and submitting the claims was taking up too much of Coker's time. At the suggestion of BROWN and Individual B, Coker then provided BROWN and Individual B with Coker's login identification, password, and provider number for the Medicaid online claims submissions system, so that BROWN and Individual B could directly log into the Medicaid claims system as Coker, and submit claims using Coker's provider number. As with the claims submitted and caused to be submitted by Coker herself, the claims directly submitted and caused to be submitted by BROWN and Individual B represented that Coker had personally provided the psychotherapy services, when in fact COKER had not provided the service.

15. In furtherance of the conspiracy and to effect the objects of the conspiracy:

4

(a) On or about February 10, 2011, Coker provided BROWN with a check in the amount of $2,921.28 representing BROWN's 70% share of certain claims submitted to Medicaid under the conspiracy.

(b) On or about August 10, 2011, Coker provided BROWN with a check in the amount of $7,335.95 representing BROWN's 70% share of certain claims submitted to Medicaid under the conspiracy, less a $1,000 advance Coker had recently provided to BROWN.

(c) On or about September 30, 2011, Coker provided BROWN with a check in the amount of $2,625.35 representing BROWN's 70% share of certain claims submitted to Medicaid under the conspiracy.

(d) On or about May 5, 2011, Coker, BROWN, and Individual B submitted and caused to be submitted to Medicaid a claim for psychotherapy services (CPT Code 90808) that falsely represented that on April 27, 2011, Coker personally psychotherapy services to a patient with initials A.S.

All in violation of Title 18, United States Code, Section § 1349.

## COUNTS TWO THROUGH TWENTY-FOUR
(Health Care Fraud)

### Introduction

16. The allegations in paragraphs 1 and 2 are realleged and incorporated by reference as though fully stated herein.

17. At all times relevant to this Indictment, BROWN owned and operated We-MPACT, LLC, a social services business with office locations in Bristol, Connecticut, and Torrington, Connecticut.

### Brown's Scheme to Defraud Medicaid

18. Between in or about August 2010 and April 2014, in the District of Connecticut and elsewhere, BROWN knowingly and willfully executed and attempted to execute a scheme and artifice to defraud Medicaid, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, through materially false and fraudulent pretenses and representations, in connection with the delivery of and payment for health care benefits, items, and services; that is, BROWN submitted and caused to be submitted to Medicaid materially false claims for psychotherapy services rendered by We-MPACT or its contractors on particular dates, when as BROWN well and truly knew, no services of any kind had been performed by We-MPACT or its contractors on those dates. By submitting claims for psychotherapy services that were not rendered, BROWN obtained and attempted to obtain money to which she was not entitled.

### Manner and Means

19. In furtherance of the above scheme or artifice to defraud, BROWN committed the following acts.

20. On or about August 24, 2010, We-MPACT enrolled as a participating provider in the Medicaid program. BROWN completed the Medicaid provider application and signed the application as Executive Director of We-MPACT.

21. On or about August 24, 2010, BROWN obtained a Medicaid provider number for We-MPACT in the name of Provider #1, a licensed clinical social worker whose identity is known to the Grand Jury.

22. On or about November 6, 2012, BROWN completed a re-enrollment application for We-MPACT as a provider in the Medicaid program.

23. Beginning in or about January 2011, the exact date being unknown to the Grand Jury, and continuing to on or about April 9, 2014, in the District of Connecticut and elsewhere, BROWN submitted and caused to be submitted to Medicaid claims for psychotherapy services on dates on which no such services were rendered; in other words, the psychotherapy claims were entirely made up.

24. The vast majority of the claims BROWN submitted and caused to be submitted to Medicaid used Current Procedural Terminology (CPT) Code 90808, which falsely represented that We-MPACT had provided an approximately 75-80 minute individual psychotherapy session face-to-face with the patient in an office or outpatient facility, or CPT Code 90837, which falsely represented that We-MPACT had provided an approximately 60-minute individual psychotherapy session face-to-face with the patient in an office or outpatient facility.

25. Most of the claims BROWN submitted and caused to be submitted falsely stated that the psychotherapy services were personally rendered by Provider #1, a clinical social worker licensed by the State of Connecticut, or Provider #2, a clinical social worker licensed by the State of Connecticut, whose identities are known to the Grand Jury. In fact, the services were not performed at all.

Execution of the Scheme

26. On or about the dates below, in the District of Connecticut and elsewhere, BROWN submitted and caused to be submitted to Medicaid materially false claims for psychotherapy services, when as BROWN well and truly knew, no services of any kind had been

performed for the Medicaid clients by anyone associated with BROWN or We-MPACT on each of the dates:

| COUNT | Medicaid Client Initials | Date of Service | Rendering Provider | CPT Code | Claim Submitted | Date Claim Paid |
|---|---|---|---|---|---|---|
| 2 | D.S. | 5/26/2013 | Provider #1 | 90837 | 6/5/2013 | 6/7/2013 |
| 3 | D.S. | 8/30/2013 | Provider #1 | 90837 | 9/5/2013 | 9/6/2013 |
| 4 | D.S. | 9/19/2013 | Provider #1 | 90837 | 9/19/2013 | 9/20/2013 |
| 5 | C.H. | 6/19/2013 | Provider #1 | 90837 | 6/19/2013 | 6/21/2013 |
| 6 | C.H. | 7/3/2013 | Provider #1 | 90837 | 7/3/2013 | 7/5/2013 |
| 7 | C.H. | 8/7/2013 | Provider #1 | 90837 | 8/8/2013 | 8/9/2013 |
| 8 | A.F. | 7/8/2013 | Provider #1 | 90837 | 7/17/2013 | 7/19/2013 |
| 9 | A.F. | 7/14/2013 | Provider #1 | 90837 | 7/17/2013 | 7/19/2013 |
| 10 | A.F. | 7/20/2013 | Provider #1 | 90837 | 8/8/2013 | 8/9/2013 |
| 11 | A.P. | 7/7/2013 | Provider #1 | 90837 | 7/17/2013 | 7/19/2013 |
| 12 | A.P. | 7/13/2013 | Provider #1 | 90837 | 7/17/2013 | 7/19/2013 |
| 13 | A.P. | 7/22/2013 | Provider #1 | 90837 | 8/8/2013 | 8/9/2013 |
| 14 | N.B. | 7/11/2013 | Provider #1 | 90837 | 7/17/2013 | 7/19/2013 |
| 15 | N.B. | 7/14/2013 | Provider #1 | 90837 | 7/17/2013 | 7/19/2013 |
| 16 | N.B. | 8/4/2013 | Provider #1 | 90837 | 8/8/2013 | 8/9/2013 |
| 17 | L.R. | 8/9/2013 | Provider #1 | 90837 | 8/21/2013 | 8/23/2013 |
| 18 | L.R. | 9/5/2013 | Provider #1 | 90837 | 9/19/2013 | 9/20/2013 |
| 19 | G.H. | 6/7/2013 | Provider #1 | 90837 | 6/19/2013 | 6/21/2013 |
| 20 | G.H. | 1/2/2014 | Provider #2 | 90837 | 1/7/2014 | 1/10/2014 |
| 21 | G.H. | 1/9/2014 | Provider #2 | 90837 | 1/9/2014 | 1/10/2014 |
| 22 | T.K. | 2/14/2014 | Provider #2 | 90837 | 2/20/2014 | 2/21/2014 |
| 23 | T.K. | 3/10/2014 | Provider #2 | 90837 | 3/20/2014 | 3/21/2014 |
| 24 | T.K. | 3/4/2014 | Provider #2 | 90837 | 3/6/2014 | 3/7/2014 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

A TRUE BILL.

/s/
---
FOREPERSON

UNITED STATES OF AMERICA

DEIRDRE M. DALY
UNITED STATES ATTORNEY

DAVID J. SHELDON
ASSISTANT UNITED STATES ATTORNEY

9